UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. GUENTHER,

      Plaintiff,                Civil Action No. 10-14314

            v.               District Judge JULIAN ABELE COOK
                          Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Michael A. Guenther brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #14] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

## PROCEDURAL HISTORY

      On July 24, 2007, Plaintiff applied for DIB and SSI, alleging disability as of November 27, 2005 (Tr. 164-169). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on December 21, 2009 in Detroit, Michigan (Tr. 29). Patricia S. McKay, Administrative Law Judge ("ALJ") presided. Plaintiff, represented by attorney Bryan Sunisloe, testified (Tr. 33-64) as did Vocational Expert ("VE") Michael

Rosco (Tr. 64-88). On January 29, 2010, ALJ McKay found Plaintiff not disabled (Tr. 20). On July 20, 2010, the Appeals Council denied review (Tr. 2-4). Plaintiff filed suit in this Court on October 28, 2010.

### BACKGROUND FACTS

Plaintiff, born May 4, 1959, was 50 when ALJ McKay issued her decision (Tr. 20, 164). He completed three years of college and worked previously as a custodian, customer service representative, sales manager, salesman, and truck driver (Tr. 187, 191). His application for benefits alleges disability as a result of multiple ruptured discs (Tr. 186).

**A.    Plaintiff's Testimony**

The ALJ began the hearing by noting that Plaintiff would be required to show the onset of disability on or before December 31, 2010 (Tr. 32).

Plaintiff testified that he was right-handed, stood 6' 4" and weighed 288 pounds (Tr. 34). A resident of Eastpointe, Michigan, he indicated that he shared his home with a boarder to meet expenses (Tr. 34). He reported that he had partial custody of his ten-year-old daughter (Tr. 35). Plaintiff stated that his college major was land surveying but that he did not receive a degree (Tr. 35).

Plaintiff stated that between 1980 and 1996, he worked as a moving truck driver, requiring him to make cross-country trips (Tr. 36-37). He reported that the moving jobs were followed by work in customer service and swimming pool installation up until 2001 when he injured his shoulder (Tr. 39, 42-43). He reported that his right arm was "pulled off" and his rotator cuff severed (Tr. 52). He indicated that he then worked briefly in alarm sales and as a school custodian (Tr. 41). He reported that he had not worked since sustaining a workplace fall in November, 2005 (Tr. 41).

Plaintiff reported that he no longer drove because he was prone to falling asleep at

unexpected times (Tr. 46). He indicated that on a typical day, he read, watched television, and tried to stay mobile (Tr. 49). He stated that he was independent in self-care activities or doing laundry, but alleged difficulty doing dishes and performing yard work (Tr. 49). He denied the ability to write with his right hand or sleep for more than two hour stretches (Tr. 49-51).

Plaintiff testified that before hurting his back in November, 2005, he volunteered with the Humane Society (Tr. 52). He reported that at present, his "biggest issue" was back problems creating left leg numbness, adding that he occasionally lost control of his left leg (Tr. 53). He noted that a recent weight gain of 50 pounds had exacerbated his back problems, adding that he attempted to lose weight without success (Tr. 53-54, 63). He reported that he currently took either Motrin or Advil for back pain (Tr. 54). He alleged that financial constraints prevented him from taking prescription medicine (Tr. 56). Plaintiff testified that his tobacco use was limited to two or three cigarettes per week (Tr. 57).

In response to questioning by his attorney, Plaintiff opined that his condition had worsened since November, 2005, alleging that he was unable to hold a cup of coffee or otherwise perform manipulative functions with his right hand (Tr. 60). He denied overhead reaching with his right arm (Tr. 61). He reiterated that back and arm problems created sleep disturbances (Tr. 62). He estimated that he could walk up to 300 feet, sit for up to 45 minutes, but could kneel only with difficulty (Tr. 63).

### B.    Medical Evidence

### 1.  Treating Sources

In June, 2001, Plaintiff sustained a dislocated neck and a fractured humerus in a fall (Tr. 249). He underwent neck and rotator cuff surgery without complications (Tr. 249). In November, 2005, Plaintiff sought emergency treatment for lower back pain (Tr. 252-257,

261, 271).   He was prescribed Demerol and Valium before being discharged (Tr. 257). Treating notes from later the same month by Agrawal Rajiv, M.D.  reference chronic back pain with radiculopathy, obesity, and tobacco use (Tr. 278).   Plaintiff was prescribed Vicodin, Flexeril, and Valium (Tr. 278).

### 2.  Non-Treating Sources

In March, 2007, Kamal Nangia, M.D. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 281-284).  Plaintiff reported that he was unable to tie his shoes or grasp with his right hand since his 2001 injury (Tr. 281, 287).  He admitted that he could walk half a mile, climb a flight of stairs, and sit up to 45 minutes at a stretch (Tr. 281). Plaintiff reported that his drug use was limited to occasional Motrin (Tr. 281).  He did not require the use of a cane, exhibited a normal gait, and was able to squat (Tr. 283).  He exhibited 4/5 grip strength on the right with decreased flexion of the fourth and fifth fingers and a decreased range of shoulder motion (Tr. 283).  The examination was otherwise unremarkable (Tr. 283, 285-288).

The following month, a Residual Functional Capacity Assessment (physical) performed on behalf of the SSA found that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for six of eight hours per workday; and push and pull without limitation in all extremities (Tr. 307).  The Assessment limited him to occasional climbing, stooping, kneeling, and crawling; and frequent (as opposed to *constant*) balancing and crouching (Tr. 308). His manipulative impairments consisted of a limitation on overhead reaching on the right (Tr. 309).   The Assessment found the absence of visual, communicative, or environmental limitations (Tr. 310).  Plaintiff was deemed only partially credible (Tr. 307).

In December, 2009, J. Alan Robertson, M.D. performed a consultive medical

-4-

examination, noting Plaintiff's reports of left foot, hamstring, and knee pain (Tr. 290). Plaintiff also reported that numbness in his right fourth and fifth fingers created difficulty getting dressed (Tr. 291).  He alleged pain in the right shoulder upon any movement (Tr. 291).  Plaintiff characterized his overall health as "fair" (Tr. 294).

Dr. Robertson observed atrophy "involving the right deltoid," right hand, and forearm (Tr. 296).  He stated that he "choose not to measure the circumference of the upper extremities inasmuch as the volume of muscle atrophy is so profound and obvious there is no reason to quantify the amount . . ." (Tr. 298).  He observed a normal gait (Tr. 298).  Citing March, 2007 imaging studies of the right shoulder, he noted "malpositioned" hardware from a prior surgery (Tr. 300).  Dr. Robertson opined that Plaintiff was also "an appropriate candidate for surgical decompression," adding that neither shoulder nor back surgery would "significantly restore function" (Tr. 302).  He found Plaintiff disabled[1] (Tr. 303).

### C.  Vocational Expert Testimony

VE Michael Rosco classified Plaintiff's past work as a custodian as unskilled and exertionally medium; sales work, semiskilled/medium to light; installation work, semiskilled/medium; and truck driver, furniture mover, and delivery work semiskilled/very heavy[2] (Tr. 67).  He testified that the truck driving skills could be transferred to exertionally

---

[1]

Doctor Robinson cited "March 26, 2007" imaging studies of the right shoulder in his report (Tr. 300).  It appears that the physician misstated the date of the studies.  First, the medical transcripts do not contain imaging studies for that date.  Second, Plaintiff's brief does not reference what would be relatively recent (and therefore possibly relevant) studies. Third, although March 26, 2007 was the date of the consultive exam performed on behalf of the SSA by Dr. Nangia, neither Dr. Nangia nor the non-examining assessment performed the following month reference the studies (Tr. 281, 307-310).

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at

light and medium jobs (25,000 medium positions in the regional economy and 4,000 light) (Tr. 68). He stated further that the customer service skills could be transferred to jobs at the light and sedentary levels (40,000 light, 5,000 sedentary) (Tr. 68). He added that the "alarm installation skills" would transfer only to other jobs at the medium exertional level (Tr. 68). ALJ McKay then posed the following question to the VE:

> Let's assume we have a hypothetical claimant with our claimant's age, education, and past work experience with the residual functional capacity to perform the full-range of medium exertional work but with the following additional limitations: Would be limited to occasional overhead reaching with the right upper extremity, which is the dominant arm. Would be limited to occasional stooping or bending, or twisting from the waist. Would be limited to occasional climbing of stairs or ladders. And occasional kneeling or crawling. Would that hypothetical claimant be able to perform this past work you've identified?

(Tr. 70). The VE replied that the above limitations would preclude all of Plaintiff's past relevant jobs except for alarm sales (Tr. 70). He added however, that the individual would be able to perform all of the above-listed jobs using transferrable skills (Tr. 71). In addition, he reported that the same individual could perform the unskilled work of simple assembly, packaging, sorting, and machine tending (35,000 )(Tr. 71).

In response to further questioning by the ALJ, the VE reported that if the individual were limited to occasional gripping with the right upper extremity, the medium driving positions would be eliminated and unskilled medium work would be limited to inspection, sorting, and machine tending (4,000) (Tr. 72). He testified that if the individual were also limited by the occasional use of the right upper extremity for fine manipulations, it would not

---

a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

additionally erode the transferrable or unskilled work  (Tr. 73).  However, if the use of the

right hand were limited to the use of a "guide," the unskilled job numbers would be

significantly eroded (Tr. 73).

> The ALJ then posed a second hypothetical question:

> [Exertionally light work limited to] occasional overhead reaching with the
> right upper extremity.  For ease, we'll just make it occasional stooping,
> bending, twisting, occasional crouching, crawling, kneeling, occasional
> climbing of stairs and ladders.

(Tr. 76).  The VE replied that it would not eliminate the above-cited transferrable jobs

at the light level (Tr. 76).  He testified further that the individual could perform the

unskilled light work of an assembler, packager, sorter, and machine tender (30,000)

(Tr. 76).  He found that if the individual were limited to occasional gripping, the

unskilled jobs would be reduced (3,000) and if a sit/stand option were included, the

unskilled work would be reduced "to an insignificant number" (Tr. 76).  The VE

stated that given the same limitations, no past relevant work could be performed at the

sedentary level (Tr. 77).  He stated that at the sedentary level, the individual could

perform the work of a customer service representative (2,500) (Tr. 77).  He stated

further that the individual would be able to perform a limited number of jobs as a

greeter (700) but could not work at the two-handed job of ticket taker (Tr. 78).  The

VE found that if Plaintiff's testimony were fully credited, he would be unable to

perform any work, due to his tendency to fall asleep, inability to walk for significant

periods, and back pain (Tr. 80).

The ALJ then prompted the VE for testimony concerning sedentary, unskilled jobs

such as lobby attendant, gate attendant, and warehouse worker (Tr. 81).  The VE (apparently

referring to the most recent hypothetical) stated that 1,500 such jobs existed in the regional

economy (Tr. 81-81).  He stated that his testimony was consistent with the information found

-7-

in the Dictionary of Occupational Titles ("DOT") except with respect to the sit/stand option and findings regarding the skill level of the security guard and gate attendant positions which he stated were based on professional experience (Tr. 82).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that the severe impairments of "history of right humerous fracture status post open reduction with internal fixation; chronic lower back pain with radiculopathy; obesity; hypertension; history of right rotator cuff injury status post repair; and a history of left arthroscopic knee surgery" but that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 13-14).  ALJ McKay found that while Plaintiff was unable to perform any of his past relevant work, he retained the residual functional capacity ("RFC"):

> "[T]o perform medium work . . . with only occasional reaching overhead with the right dominant upper extremity; occasional twisting, bending and stooping; occasional climbing of stairs and ladders; occasional kneeling, crawling and use of the right upper extremity for gripping and for manipulation"

(Tr. 14).  Citing the VE's testimony, the ALJ found that Plaintiff could perform his former job as an alarm sales person as well as a significant range of unskilled work (Tr. 18-19).

The ALJ found Plaintiff's allegations of limitations "not  credible to the extent they [were] inconsistent with the above [RFC]" (Tr. 14).  She characterized Plaintiff's testimony as "evasive and vague . . ." noting that his acknowledged activities of daily living contradicted his testimony of disabling limitations (Tr. 15).  She also noted that Plaintiff's claim that he was unable to use his right (dominant) hand for writing was undermined by the fact that his application for benefits was neatly written (Tr. 15).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of*

-8-

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at

-9-

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes four arguments in favor of remand.  First, he contends that the RFC is not supported by the record.  *Plaintiff's Brief* at 5-6.  Next, he argues that in finding that he was not credible, the ALJ improperly discounted Dr. Robertson's December, 2009 assessment.  *Id.* at 6-7.  Third, Plaintiff contends that the ALJ also erred by finding that he was not disabled at Step Three of the administrative sequence.[3]  *Id.* at 8-9.  Finally, Plaintiff argues that the ALJ's job findings were not supported by substantial evidence.  *Id.* at 9.

Plaintiff's argument that the rejection of Dr. Robertson's opinion tainted the credibility determination (argument two) and contentions regarding the Step Three findings (argument three) can be considered in tandem.  Likewise, the argument that neither the RFC nor job findings are supported by substantial evidence (arguments one and four) are intertwined to the extent that they are most efficiently considered together.

### A.  The Credibility Determination

#### 1.  Basic Principles

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.1986). "First, the adjudicator must consider whether there is an underlying

---

[3]

Plaintiff's counsel argues that the ALJ erred by finding that his client's conditions were not "severe." *Plaintiff's Brief* at 8.  Because in fact, the ALJ found several "severe" impairments at Step Two of the analysis (Tr. 13) it appears that counsel has confused a Step Two finding of "severe" impairments with a finding of disability under the listings at Step Three.  *See* 20 CRF Part 404, Subpart P, Appendix 1.  As such, I construe this argument to challenge the ALJ's Step Three findings.

medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." C.F.R. § 404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(citing *Walters v. Commissioner of Social Sec.*, 127 F. 3d 525, 531 (6th Cir. 1997)). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, at 531. *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

## 2. Application to the Present Case

Plaintiff's argument that the credibility analysis was procedurally or substantively deficient is unavailing. The ALJ supported her determination by noting discrepancies between Plaintiff's testimony and other evidence of record. She noted that although Plaintiff

-11-

testified that he was unable to write with his dominant hand, his DIB application forms were "neatly and legibly completed" (Tr. 15). She noted further that his testimony that he was unable to walk more than 300 feet stood at odds with an earlier admission that he could walk half a mile (Tr. 15). She observed that Plaintiff's claim that he had not driven since 2003 because of sleepiness contradicted his earlier statement that he drove his daughter to and from school more recently (Tr. 15). The ALJ also found that the fact that Plaintiff had been actively pursuing job opportunities undermined his position that he was unable to perform any work (Tr. 16). *See Dunlap v. Astrue,* 2011 WL 5037231, *10 (N.D.Ohio 2011); *Gumbert v. Commissioner of Social Sec.*, 2011 WL 3652691, *11 (S.D.Ohio 2011)(claimant's attempts to secure employment, along with other factors, may be used to discount allegations of disability). Even taking into account Plaintiff's financial limitations, she observed that his treatment history had been sporadic (Tr. 16).

Plaintiff also argues that his allegations of limitation were supported by Dr. Robertson's disability opinion. However, the ALJ's rejection of Dr. Robertson's December, 2009 opinion is well explained and well supported. The ALJ observed that most of the evidence cited by Dr. Robertson in support of the disability opinion predated the alleged onset of disability by several years (Tr. 17). Indeed, consultive examination notes from March, 2007 state that Plaintiff did not require the use of a cane, exhibited a normal gait, and was able to squat (Tr. 283). The ALJ pointed out that while Dr. Robertson opined that injuries sustained prior and during 2001 caused disability, Plaintiff was able to work until November, 2005 (Tr. 17).

The ALJ also noted that Dr. Robertson's statement that Plaintiff had "'absolutely no worthwhile functional ability remaining to his right upper extremity'"was contradicted by Plaintiff's admission that he retained some use, albeit limited, of the right arm and hand (Tr.

-12-

18 *citing* 302).  Dr. Robertson's findings on this point are also contradicted by a March, 2007 SSA examiner's finding that Plaintiff exhibited 4/5 grip strength on the right (Tr. 283). Finally, because Dr. Robertson was acting only in the capacity of a one-time consultive physician rather than a treating source, his findings were "entitled to no special degree of deference." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)(citing *Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)).  Even assuming that I accepted the contention that Dr. Robertson's opinion was improperly discredited because he was hired by Plaintiff's counsel, the ALJ otherwise provided a number of other reasons for rejecting the consulting physician's conclusions.

Likewise, having found neither Plaintiff's testimony nor Dr. Roberson's assessment entirely credible, the ALJ was not obliged to adopt these claims at Step Three.  Contrary to the argument that the ALJ erred by failing to *explain* her Step Three determination, she devoted the better part of the follow page to a review of the medical records (Tr. 14-16) also noting that she based the RFC in large part on the April, 2007 Residual Functional Capacity Assessment (Tr. 307-310).  As such, the ALJ's credibility determination, rejection of Dr. Robertson's opinion, and  Step Three findings do not provide grounds for reversal.

### B.   The Hypothetical and RFC

#### 1.  Basic Principles

*Varley v. HHS,* 820 F.2d 777, 779 (6th Cir.1987), sets forth the Sixth Circuit's requirements for a VE's testimony. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id.* at 779 (internal citations omitted); *See also Webb v. Commissioner of Social Sec.* 368 F.3d

629, 632 (6th Cir.2004). Because the VE's responses constitute the only evidence supporting a Step Five determination, the hypothetical question must be supported by record evidence. *Teverbaugh v. Comm'r of Soc. Sec.,* 258 F.Supp.2d 702, 706 (E.D.Mich.2003) (Roberts, J.). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994) ( *citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

### 2. Application to the Present Case

Substantial evidence supports the ALJ's choice of hypothetical limitations. Thus, the VE's corresponding job findings support the Step Five determination that Plaintiff could perform a significant number of jobs. *See Teverbaugh,* at 706. The presence of 3,000 to 4,000 unskilled, exertionally medium positions in the regional economy, as found by the ALJ, constitute a "significant" number[4] (Tr. 19). To be sure, while the ALJ found that Plaintiff could perform the unskilled jobs of simple assembly, packaging, sorting, machine tending (Tr. 19, 71) the VE's response to the set of hypothetical limitations conforming to the RFC (with the inclusion of manipulative limitations) was that the medium unskilled jobs would be limited to "*inspection*, sorting, and machine tending" (Tr. 14, 72). Nonetheless, because the VE's testimony (3,000 to 4,000 jobs of "inspection, sorting, and machine tending" existed in the regional economy) was given in response to the hypothetical question identical to the RFC found in the administrative opinion, substantial evidence supports the conclusion that Plaintiff could perform a significant number of jobs in the regional economy

---

[4]The Sixth Circuit has accepted the existence of 1,350 to 1,800 jobs in the regional economy as a significant number. *See Born v. Sec'y of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).

(compare Tr. 19, 72).

Moreover, I disagree that the ALJ was obliged to adopt the VE's later statement that if Plaintiff were limited to using his right hand as a "guide," the range of medium jobs would be essentially eliminated. *Plaintiff's Brief* at 9 (citing Tr. 73-75). The ALJ posed numerous hypothetical limitations to the VE over the course of the hearing and adopted (with minor inconsistencies) the VE's job testimony in response to the question that formed the basis of the RFC. She was not required to include Plaintiff's allegation that he was only able to use his right hand as a "guide" or other discredited claims in the hypothetical question or RFC. *Stanley, supra.* As noted by the ALJ, Plaintiff's apparent ability to write legibly with the right hand, the finding of 4/5 grip strength, and the ability to drive until 16 months before the hearing stand at odds with his claim that he used his right hand only as a "guide" (Tr. 15-16).

In closing, I note that while the record supports the conclusion that Plaintiff experiences some degree of physical limitation, the ALJ's decision was easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. *Mullen v. Bowen*, *supra*. The fact that I might find differently upon *de novo* review of is no import.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #14] be **GRANTED**, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be **DENIED**.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: December 27, 2011

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on December 27, 2011.

s/Johnetta M. Curry-Williams
Case Manager

-16-